**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Case No. 1:18-CR-00363-RM**

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**v.**

**1.  MIGUEL ANTONIO GARCIA,**

       **Defendant.**

---

## GOVERNMENT'S SENTENCING STATEMENT

---

The United States of America (the "Government"), by and through Jason R. Dunn,

United States Attorney for the District of Colorado, and Assistant United States Attorneys

Conor A. Flanigan and Peter McNeilly, respectfully submits this Sentencing Statement

pursuant to D.COLO.LCRR 32.1(a).

## I. INTRODUCTION

On January 10, 2019, a federal grand jury returned a Superseding Indictment that

charged the Defendant, Miguel Antonio Garcia (the "Defendant"), in three counts:

**Count 1:** Possession of a Firearm and Ammunition by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(1);

**Count 2:** Possession with Intent to Distribute 50 Grams or More of Methamphetamine (Actual), a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii); and

**Count 3:** Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

[CM/ECF No. 47].

On February 4, 2019, this Court began a jury trial on Counts 1-3 of the Superseding Indictment.  [CM/ECF Nos. 63-64].  On February 6, 2019, the jury returned guilty verdicts on all Counts.  [CM/ECF No. 79].  Sentencing is set for Friday, May 10, 2019, at 10:00 p.m. [CM/ECF No. 66].

## II. STATUTORY PENALTIES

The statutory penalty for Count 1 is not more than 10 years imprisonment, not more than a $250,000 fine, or both; not more than 3 years supervised release; and a $100 special assessment fee.

The statutory penalty for Count 2 is not less than 10 years and not more than life imprisonment, not more than a $10,000,000 fine, or both; not less than 5 years and up to a life term of supervised release; and a $100 special assessment fee.

The statutory penalty for Count 3 is not less than 5 years and not more than life imprisonment consecutive to any other sentence imposed, not more than a $250,000 fine, or both; not more than 5 years supervised release; and a $100 special assessment fee.

## III. APPLICATION OF 18 U.S.C. § 3553(a) FACTORS

### A. The Nature and Circumstances of the Offense

The Defendant stands convicted of possession of methamphetamine with intent to distribute it, possession of a firearm by a prohibited person, and possession of a firearm in furtherance of a drug trafficking crime.  Evidence at trial established the Defendant possessed a black backpack, as seen on multiple security camera videos, which contained approximately 361 grams of methamphetamine (approximately 260 grams of actual

methamphetamine), as well as two firearms: a SCCY Industries, Model CPX-2, 9mm pistol with eight rounds in the magazine, and a silver Smith and Wesson, Model 1006, 10mm pistol with one round in the chamber and one round in the magazine.  Other items found inside the bag indicated the Defendant possessed the drugs with intent to distribute them, including two scales and empty plastic baggies.

The Defendant was arrested on July 11, 2018, following a 911 call regarding a suspect with two firearms in the area of West Alameda Ave. and South Pecos St. in Denver, Colorado.  The 911 caller (the "Caller") described the suspect, later identified as the Defendant, as a Hispanic male aged 30-35 wearing a "black or kind of black" shirt, blue pants, black shoes, and carrying a black suitcase and a bible.  The Caller reported the Defendant pulled a firearm from his waistband and showed it to the Caller.  The Defendant later pulled a second firearm from inside the bible the Defendant carried.  The Caller, fearing what the Defendant might do with the firearms, called 911, and the Defendant fled the area.

Security camera footage from a liquor store located at 1333 West Alameda Ave. in Denver shows the Defendant run through an alley located to the north behind the business just two minutes later.  The Defendant wore a dark grey shirt, blue jeans, black shoes, and carried a brown bible under his left arm, as well as a black bag in his right hand.  A few seconds later, security camera footage from the same store shows the Defendant enter a parking lot, which is located east of the business, from the same alley.  The Defendant still carried the brown bible under his left arm and black bag in his right hand.  The Defendant

approached three different vehicles parked at the south end of the parking lot and appeared to speak to the vehicles' occupants. After a few minutes, the Defendant walked north back into the parking lot and crouched behind a white SUV for approximately five seconds. The Defendant then walked northeast and entered the alley at the northern end of the parking lot.

At approximately 12:07 p.m., Denver Police Department ("DPD") officers spotted the Defendant walking through a parking lot located just east of the liquor store parking lot, which is joined by the alley the Defendant is seen entering on the liquor store security camera footage. When spotted by DPD, the Defendant was wearing a dark grey shirt, blue jeans, and black shoes, and was carrying a brown bible, but no longer carried the black bag reported by the Caller and shown on the security camera footage. Officers made contact with the Defendant and asked the Defendant, "where's your bag?" to which the Defendant responded that he did not have a bag.

Shortly thereafter, additional DPD officers arrived on scene and searched the alley located to the north of the parking lot, as the arresting DPD officers had seen the Defendant walk from that area prior to making contact with him. Officers noticed a black backpack on the ground between two vans parked near the alley. The backpack appeared similar in size, shape, and color to the backpack the Defendant is seen carrying on the liquor store security camera footage. Officers eventually searched the bag, wherein they discovered the guns and drugs. The Defendant was then arrested and taken into custody.

**B. The History and Characteristics of the Defendant**

Based on the criminal history available to the Government at this time, the Defendant appears to have a lengthy criminal record dating back to 1996, when he was just 17.  The Defendant's early criminal history involves several traffic infractions and other misdemeanor violations.   Despite early and frequent run-ins with the criminal justice system, the Defendant continued to engage in increasingly serious criminal behavior, and showed a disregard for the law and the sentences he received.

In July of 2007, the Defendant pled guilty to robbery and was sentenced to 3 years imprisonment.  Nevertheless, the Defendant continued to engage in similar conduct.  In January of 2010, the Defendant pled guilty to misdemeanor theft, and received a sentence of 90 days imprisonment credit for time served.  But the Defendant did not stop there.  In 2014, just four years after the Defendant completed his first robbery sentence, the Defendant again pled guilty to robbery.  This time, the Defendant was sentenced to six years community corrections.  Despite his lenient sentence, the Defendant failed to comply with the terms of his sentence, and a warrant was issued for his arrest in August of 2017.

Indeed, the Defendant's most recent criminal conduct shows his utter disregard for the second-chances he has received.  The Defendant's 2017 arrest warrant was issued in connection with what appears to be a larger crime spree he committed throughout Colorado, including two Aggravated Motor Vehicle Theft cases and an Escape case in El Paso County, as well as an Aggravated Robbery case in Adams County.  When the Defendant committed the instant offenses in July of 2018, he was on bond for these

pending cases. Moreover, during the pendency of these proceedings, the Defendant was charged with an additional Aggravated Robbery case in Denver County. While the exact nature and circumstances of these cases are unknown at this time, it is clear that the Defendant's prior experience with the criminal justice system, and the sentences he has received therefrom, have had little effect in preventing him from engaging in increasingly violent, dangerous behavior.

**C. Sentencing Range as Set Forth by the Sentencing Commission**

The Government offers the following calculations using the 2018 version of the advisory United States Sentencing Guidelines (USSG):

    i.    Count 1 – 18 U.S.C. § 922(g)(1):

        a. **Base Offense Level:**          **24**

The base guideline provision applicable to Count 1 is USSG § 2K2.1(a)(1), with a base offense level of 24.  This base guideline provision applies because the Defendant committed the instant offense subsequent to sustaining at least two felony convictions for crimes of violence, including two convictions for robbery in 2007 and 2014.

        b. There are no adjustments for specific offense characteristics. A 4 level enhancement for use or possession of a firearm or ammunition in connection with another felony offense pursuant to USSG § 2K2.1(b)(6)(B) does not apply, as the Defendant was also convicted of a violation of 18 U.S.C. § 924(c).  *See* USSG § 2K2.4(b), comment (n.4).

     c.   There are no victim-related, role in the offense, or obstruction adjustments.  Multiple count adjustments are addressed below.

     d.   **Adjusted Offense Level:**         **24**

  ii.     <u>Count 2 – 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii):</u>

     a.   **Base Offense Level:**         **32**

The base guidelines provision applicable to Count 2 is USSG § 2D1.1(a)(5), involving at least 150 grams but less than 500 grams of Methamphetamine (Actual).  The Government's drug quantity calculation is based on Government's Exhibit 30 and the Parties' Stipulations regarding the methamphetamine found inside the Defendant's bag:

> 3. Government Exhibit 27 / DPD Evidence Tag # 981671-1 is methamphetamine with a net weight of 307.1 grams and a purity level of 69.41% pure, indicating the total amount of pure (100%) methamphetamine is 213.158 grams.

> 4. Government Exhibit 28 / DPD Evidence Tag # 981671-2 is methamphetamine with a net weight of 54.162 grams and a purity level of 86.08% pure, indicating the total amount of pure (100%) methamphetamine is 46.622 grams.

[CM/ECF No. 62, Gov. Exhibits 27-28, 30, 40; CM/ECF No. 68].

     b.   There are no adjustments for specific offense characteristics.  A 2 level enhancement for possession of a dangerous weapon pursuant to USSG 2D1.1(b)(1) does not apply, as the Defendant was also convicted of a violation of 18 U.S.C. § 924(c).  *See* USSG § 2K2.4(b), comment (n.4).

   c. There are no victim-related, role in the offense, or obstruction adjustments.  Multiple count adjustments are addressed below.

   d. **Adjusted Offense Level:**                    **32**

iii.      Count 3 – 18 U.S.C. § 924(c)(1):

Count 3 carries a statutory penalty of not less than 5 years imprisonment, to be served consecutively with any other sentence of imprisonment imposed by the Court.  *See* USSG 2K2.4(b).

iv.      Multiple Counts:

   a. Counts 1-2 Total Combined Offense Level :     **32**

Counts 1-2 are closely related counts and will therefore group pursuant to USSG § 3D1.2(a).   For Counts 1-2, the grouped offense level would be **32**, as 32 is the highest offense level between Count 1 (24) and Count 2 (32).  *See* USSG § 3D1.3(a).  This group comprises one "unit" for the purpose of determining the combined offense level. USSG § 3D1.4.  Therefore, the total combined offense level for Counts 1-2 remains unchanged.

v.      Acceptance of Responsibility:

Pursuant to USSG § 3E1.1, the Defendant has not clearly demonstrated acceptance of responsibility, in that he went to trial and put the Government to its burden of proof. No downward adjustment results in a total offense level of **32**.

vi.      Criminal History:

The Defendant's criminal history computation is tentative.  The criminal history category is determined by the Court based on the Defendant's prior convictions.  Based on

information currently available, it is estimated that the Defendant is a criminal history category of **V.**

    vii.       <u>Term of Imprisonment:</u>

The Guideline range resulting from the estimated offense level of **32** and the tentative criminal history category of **V** is **188-235** months imprisonment.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level of 32 could conceivably result in a sentence as low as 121 months (Bottom of Category I) and as high as 262 months (top of Category VI).  Pursuant to 21 U.S.C. § 841(b) and 18 U.S.C. § 924(c), the Defendant's minimum term of imprisonment is 15 years (180 months).

    viii.     <u>Fine:</u>

Pursuant to USSG §5E1.2, assuming an offense level of **24** for Count 1**,** the fine range is **$20,000 to $200,000**, plus applicable interest and penalties.

Pursuant to USSG §5E1.2 and 21 U.S.C. § 841(b)(1)(A)(viii), assuming an offense level of **32** for Count 2**,** the fine range is **$35,000 to $10,000,000**, plus applicable interest and penalties.

**D. The Need for the Sentence to Achieve the Aims of 18 U.S.C. § 3553(a)(2)**

A significant prison sentence is necessary to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses. Possessing methamphetamine with intent to distribute it and possessing a firearm in furtherance of that crime, particularly where the individual is prohibited from possession of

a firearm by virtue of his status as a convicted felon, are very serious crimes.  Inside the backpack possessed by the Defendant was a large amount of methamphetamine, nearly ¾ of a pound, along with several items indicative of drug distribution, including plastic baggies and scales. The Defendant also kept two loaded firearms with his drugs; a 10mm handgun, safety off, with a round in the chamber, and a 9mm handgun loaded with ammunition.  As presented at trial, firearms are tools of drug distribution, used by drug dealers, to protect their product and their proceeds. The fact that these firearms were loaded and kept within the same bag as the drugs demonstrates the ease with which the Defendant could engage in violence and intimidation, further compounding the already dangerous nature of drug distribution.

A significant prison sentence is also necessary to afford adequate deterrence to criminal conduct. The Defendant has shown a tendency to engage in violent behavior in the past, having sustained two robbery convictions in 2007 and 2014.  Despite the lenient sentences he received for those crimes, the Defendant has continued to engage in dangerous, potentially violent behavior.  The Defendant has had opportunity after opportunity to clean up his act.  Yet time after time, the Defendant spoiled those opportunities and ignored his wake-up calls. This Court should be confident that the sentence it awards will decrease the likelihood that the Defendant will emerge from prison and commit additional crimes.  Further, a significant sentence will also signal to others that the risk of dealing drugs and possessing firearms is not offset by the potential reward.

Finally, a significant prison sentence is necessary to protect the public from further crimes of the Defendant. In the past, the Defendant has returned to the public from prison or community corrections, and continued to engage in serious criminal conduct.   Indeed, the Defendant committed the immediate offenses while he was released on bond in several state cases, and was charged with an additional Aggravated Robbery while this case proceeded to trial. A significant prison sentence is necessary to ensure the risk the Defendant poses to the public is substantially mitigated.

## IV. <u>CONCLUSION</u>

In light of the foregoing, the Government respectfully requests leave to tender a specific recommendation and submit additional matters or argument in support of the appropriate sentence after reviewing the Presentence Investigation Report.

Respectfully submitted this 8th day of March, 2019.

> JASON R. DUNN
> United States Attorney
>
> *s/Conor A. Flanigan*
> CONOR A. FLANIGAN
> Assistant United States Attorney
> United States Attorney's Office
> 1801 California Street, Suite 1600
> Denver, Colorado  80202
> Telephone:  (303) 454-0100
> Fax:   (303) 454-0405
> E-mail:   conor.flanigan@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on <u>March 8th, 2019</u>, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.


*s/Stephanie Price*
Stephanie Price (Contractor)
Legal Assistant
United States Attorney's Office